UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TRIBUS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-00150-MTS |
| | ) | |
| GOODHUE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motions to Dismiss, Docs. [15], [21], and [31].  For the following reasons, the Court grants all three Motions.

**I.      BACKGROUND**[1]

Plaintiff Tribus, LLC is a Missouri company that provides technological services to real estate brokers.  Plaintiff hired Defendant Jennifer Goodhue in January 2020 as its director of broker services; Plaintiff later promoted Goodhue to the position of director of client services, where she oversaw "operations, communications, and account management between Plaintiff and [its] medium to large brokerage clients throughout the United States and worldwide."  Doc. [1] ¶ 10. During her time with Plaintiff, Goodhue had access to Plaintiff's alleged confidential information and trade secrets, including its client list, prospective client targets, and pricing models and information, among other internal documents and plans.  In June 2020, unbeknownst to Plaintiff, Goodhue scheduled a meeting with Defendant Back At You, Inc ("BAY"), which, according to Plaintiff, is its competitor.  In January 2021, just before leaving the employ of Plaintiff, Goodhue

---

[1] The Court draws this background from the Complaint, Doc. [1], the Motions to Dismiss and related papers, and the papers relevant to Plaintiff's Motion for Temporary Restraining Order, Doc. [6], construing the facts, as it must on a motion to dismiss for lack of personal jurisdiction, in the light most favorable to Plaintiff Tribus.  *See Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020).

sent multiple emails from her Plaintiff-issued email account to what appears to be her BAY-issued email account.  Doc. [7-2].  Goodhue subsequently deleted those emails from her Plaintiff email account, preventing Plaintiff from, to this point, uncovering what Goodhue sent to the BAY email account.  She also, Plaintiff asserts, downloaded confidential documents from Plaintiff's computer system, and she accessed and edited Plaintiff's proprietary client list the day before she resigned from Plaintiff.  She officially resigned from Plaintiff January 21, 2021.  She began working at BAY sometime in January 2021.

Plaintiff hired Defendant Paige Trygstad as a client success representative in January or February 2020, in which capacity she worked closely with Goodhue and, like Goodhue, had access to information related to client needs and contracts, confidential business practices, and sales.  She resigned from Plaintiff around January 4, 2021, but kept her Plaintiff-issued computer and, Plaintiff claims, accessed it after leaving the company, in spite of Plaintiff's request that she return the computer and its "revocation of authorization to access or otherwise use the computer."  Doc. [34-1] ¶ 31.  Trygstad returned the computer "after being alerted to the Complaint" in this case. Doc. [7] at 3.  As with Goodhue, BAY hired Trygstad in January 2021.  Plaintiff alleges that Trygstad removed from the computer Plaintiff's confidential and proprietary information and sent it to Goodhue or BAY.

Plaintiff contends that Goodhue and Trygstad transmitted its confidential information and trade secrets to BAY both during and after their employment with Plaintiff and that Goodhue and Trygstad have used that information for BAY's benefit.  Doc. [1] ¶¶ 32–45.  Plaintiff further claims that BAY "encouraged or demanded that Goodhue and Trygstad use the confidential information . . . they obtained" to solicit Plaintiff's employees and customers on BAY's behalf or, alternatively, that BAY has simply "used for its benefit the confidential . . . materials" Goodhue

2

and Trygstad took from Plaintiff. *Id.* ¶¶ 46–47. Plaintiff brought this action, claiming against Goodhue and Trygstad a breach of the duty of loyalty (Counts I and III) and violations of the Missouri Computer Tampering Act (Counts II and IV), while making claims against all three Defendants for trade secret misappropriation under the federal Defend Trade Secrets Act as well as under Missouri law (Counts V and VI). Doc. [1].

Relevant to the instant Motions, BAY is incorporated in Delaware and has its principal place of business in California. According to BAY's CEO, Michael Glazer, BAY has never had an office in Missouri, is not registered with the Missouri Secretary of State to conduct business in Missouri, has never had a bank or investment account in Missouri, does not own any real estate in Missouri, and does not send its employees to events or meetings in Missouri. Doc. [15-2]. Further, BAY's website is generally accessible, and BAY advertises nationally, but it does not specifically target Missouri in its advertisements. *Id.* Plaintiff's director of strategy, Eric Stegemann, averred in a declaration that BAY "currently provides services to at least two Missouri companies," Doc. [20-1] ¶ 33, a claim BAY does not dispute. Meanwhile, both Goodhue and Trygstad are residents of Colorado and lived in Colorado throughout the entirety of their employment with Tribus. Further, neither ever traveled to Missouri for their work for Tribus. With these facts in mind, the Court turns to Defendants' Motions.

## II.   LEGAL STANDARD

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts 'to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state.'" *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011) (omission in original) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir.

2004)).  Once personal jurisdiction has been challenged, that prima facie showing "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Furminator, Inc. v. Wahba*, No. 4:10-cv-01941-AGF, 2011 WL 3847390, at *2 (E.D. Mo. Aug. 29, 2011) (quoting *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1090 (8th Cir. 2008)).  The Court views the evidence in the light most favorable to Plaintiff.  *Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020).  The party seeking to establish the Court's personal jurisdiction carries the burden of proof, however, and that burden does not shift to the party challenging jurisdiction.  *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014).

The Court engages in a two-part inquiry to assess whether it has personal jurisdiction over non-resident defendants.  *NEXTEP, LLC v. KABA Workforce Sols.*, No. 4:07-cv-01107-RWS, 2007 WL 9809030, at *2 (E.D. Mo. Oct. 5, 2007).  To exercise jurisdiction, the Court must find both (1) that Defendants' actions are covered by the Missouri long-arm statute and (2) that its exercise of jurisdiction comports with due process requirements.  *See Myers v. Casino Queen, Inc.*, 689 F.3d 904, 909–910 (8th Cir. 2012) (holding that federal district courts in Missouri must conduct separately the long-arm-statute and due-process inquiries); *Insituform Techs., Inc. v. Reynolds, Inc.*, 398 F. Supp. 2d 1058, 1062–63 (E.D. Mo. 2005).  For the reasons discussed below, the Court finds that its exercise of jurisdiction over the Defendants here would not comport with the requirements of due process.  The Court therefore need not decide whether Defendants' conduct falls within the scope of Missouri's long-arm statute and will focus instead on the due-process analysis.  *See Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011) ("We need not decide whether [the defendant's actions] suffice to place it within the bounds of Missouri's long-arm statute, because it is clear that the cited activities are not sufficient to surmount the due-process threshold."); *Conn v Zakharov*, 667 F.3d 705, 711–12

4

(6th Cir. 2012) ("Of course, if jurisdiction is not proper under the Due Process Clause it is unnecessary to analyze jurisdiction under the state long-arm statute.").

## III.   DISCUSSION

Under the Fourteenth Amendment's Due Process Clause, to establish personal jurisdiction "a plaintiff must only show sufficient 'minimum contacts' exist [between the defendant and forum] so that 'traditional notions of fair play and substantial justice' are not offended." *Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).   The Supreme Court has recognized two forms of personal jurisdiction: general jurisdiction and specific jurisdiction. *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 137 S. Ct. 1773, 1779–80 (2017); *CH Robinson Worldwide, Inc. v. House of Thaller, Inc.*, No. 19-cv-2292 (NEB/TNL), 2020 WL 1442856, at *4 (D. Minn. Mar. 24, 2020).   Plaintiff does not argue that the Court has general jurisdiction over any of the Defendants,[2] so the Court will focus on the inquiry of whether it has specific jurisdiction over BAY, Goodhue, and Trygstad.   *See Casino Queen*, 689 F.3d at 912 ("[Plaintiff] only contends the district court can exercise specific jurisdiction over [defendant] in this action, so we have no need to consider whether Missouri courts have general jurisdiction over [defendant].").

---

[2] Even if Plaintiff did make that argument, the Court finds it does not have general jurisdiction over any of the three Defendants.   Courts may exercise general jurisdiction "only when a defendant is 'essentially at home' in the state" where the court sits. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).   An individual defendant is "at home" in his or her place of domicile. *Id.*   On the evidence before the Court, Goodhue and Trygstad currently reside in Colorado and lived there at all times relevant to this case, so they are not "at home" in Missouri.   With respect to BAY, courts generally consider a corporation "at home" in its place of incorporation and principal place of business, though the Supreme Court has left open the possibility that there may exist an exceptional case where a corporation might be at home elsewhere. *Id.*; *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014).   BAY is incorporated in Delaware and has its principal place of business in California, and BAY's two Missouri customers—the only non-suit-related contacts BAY has with Missouri—are certainly insufficient to bring this case within the "exceptional" circumstances contemplated by the Supreme Court in *Daimler AG*.   Thus, the Court does not have general jurisdiction over BAY either. *See Daimler AG*, 571 U.S. at 132 (explaining that a corporation's "continuous activity of some sorts within a state" is not enough to subject it to general jurisdiction there).

"Specific jurisdiction exists 'when a defendant, through its contacts with the forum, purposefully avails itself of the privilege of conducting business in the forum,' and the plaintiff's claim 'aris[es] out of or relat[es] to the defendant's contacts with the forum.'" *White v. Steak N Shake Inc*., No. 4:20-cv-323-CDP, 2020 WL 1703938, at *2 (E.D. Mo. Apr. 8, 2020) (quoting *Pangaea v. Flying Burrito, LLC*, 647 F.3d 741, 746 (8th Cir. 2011)). Random, fortuitous, or attenuated contacts are insufficient to confer jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *NEXTEP, LLC*, 2007 WL 9809030, at *3. The Eighth Circuit references five factors in assessing whether a defendant's contacts with a forum are sufficient to confer specific jurisdiction: (1) the nature and quality of the contacts, (2) the quantity of the contacts, (3) the relationship of the cause of action to the contacts, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience to the parties. *Frost*, 951 F.3d at 980. The first three factors carry more weight than the last two. *Insituform Techs.*, 398 F. Supp. 2d at 1066 (citing *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003)); *Regenexx, LLC v. Regenex Health LLC*, 446 F. Supp. 3d 469, 478 (S.D. Iowa 2020).

## A. Defendant Back At You, Inc.

BAY does not have sufficient minimum contacts with Missouri to warrant this Court's exercise of specific jurisdiction; in fact, it is hardly apparent that BAY has much contact with Missouri at all. As noted, BAY does not have offices in this state, is not registered with the Missouri Secretary of State, has never had a bank or investment account in this state, does not send employees to this state, and does not own property in this state. It maintains a generally available and interactive website, which does not obviously target Missouri or its residents.[3] Plaintiff has

---

[3] Plaintiff suggests that the Court should exercise jurisdiction because BAY maintains an interactive website on which "potential customers may ask questions, schedule a demo, obtain information, and login [] to a portal." Doc. [20] at 7. The Court rejects that argument. First, finding personal jurisdiction based solely on the maintenance of an interactive website would vastly expand federal courts' jurisdiction in a manner inconsistent with the principle that a

provided no evidence of any advertising BAY has done in Missouri.  And the two alleged non-suit-related contacts BAY has with Missouri are just that: unrelated to Plaintiff's claims of trade secret misappropriation.  *See Frost*, 951 F.3d at 980 (finding a lack of "purposeful avail[ment]" of Minnesota's "benefits and protections" where plaintiff made a "vague assertion that [defendant] has 'transacted business within' Minnesota," and nothing suggested that those activities were related to the lawsuit).  Again, aside from the allegations in this suit, BAY's provision of services to two Missouri companies, see Doc. [20-1] ¶ 33, represent the only contact it has with the state.  Plaintiff has provided no information regarding the nature and quality of those contacts, such as how long BAY has done business with the two Missouri companies or whether it specifically sought them out because of their location in Missouri.  The quantity of contacts is lacking, as BAY has only two customers in Missouri and no other contacts supported by evidence.   Most importantly, those contacts have nothing to do with the instant matter, a requirement for the exercise of specific jurisdiction.  *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (noting that the plaintiff's claims "must arise out of or relate to the defendant's contacts" (quoting *Bristol-Myers*, 137 S. Ct. at 1780)).  Because the Court finds that the first three factors reflect a lack of the minimum necessary contacts to confer jurisdiction, the last two factors—Missouri's interest in the suit and the convenience of the parties—cannot create personal jurisdiction, regardless of whether they favor Plaintiff.  *Frost*, 951 F.3d at 981 n.4.

Seeking to save its argument, Plaintiff invokes the *Calder* effects test, see *Calder v. Jones*, 465 U.S. 783 (1984), insisting that the Court still has jurisdiction over BAY based on its tortious

---

defendant's conduct must be such that the defendant could reasonably anticipate being haled into court in a particular forum.  *See Whaley*, 946 F.2d at 451.  Second, Plaintiff's proposed approach is unsupported by caselaw.  *See Johnson v. Arden*, 614 F.3d 785, 797 (8th Cir. 2010) (declining to confer personal jurisdiction "on only the possibility that a Missouri resident had contact with" the defendant through its website); *Allied Ins. Co. of Am. v. JPaulJones L.P.*, 491 F. Supp. 3d 472, 474–77 (E.D. Mo. 2020)

actions alleged in the Complaint.  Doc. [20] at 5–6.  The *Calder* test allows exercise of personal jurisdiction where a plaintiff shows the defendant's tortious acts "(1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—in the forum state." *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010) (quoting *Lindgren v. GDT, LLC*, 312 F. Supp. 2d 1125, 1132 (S.D. Iowa 2004)).  *Calder* supplements, rather than replaces, the traditional five-factor test; the Court must consider the totality of the circumstances in deciding whether it has personal jurisdiction.  *Johnson*, 614 F.3d at 796–97; *Furminator, Inc.*, 2011 WL 3847390, at *3.  Further, the defendant's relationship with the forum must arise out of contacts that the defendant itself created with the forum state, and courts must focus on the defendant's "contacts and conduct with the forum state *itself*, not the defendant's contacts with persons who reside there."  *Whaley*, 946 F.3d at 451 (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014)); *Frost*, 951 F.3d at 981.

There are several issues with Plaintiff's reliance on *Calder*.  To begin with, Plaintiff has not provided evidence that BAY's alleged conduct—encouraging or directing Goodhue and Trygstad to take and use Plaintiff's confidential information to BAY's benefit—was uniquely or expressly aimed at Missouri.  BAY and its employees are located outside of Missouri, as are Goodhue and Trygstad.  Wherever and however BAY communicated its alleged demands to Goodhue and Trygstad, no part of that communication took place in Missouri.  *See House of Thaller*, 2020 WL 1442856, at *5–6 (finding no specific jurisdiction in Minnesota where there were no pleadings that the defendant "made any of his alleged misrepresentations in Minnesota," there was no indication he made the allegedly tortious statements in phone calls or emails addressed to the plaintiff's Minnesota-based representatives, and "the only communications [the defendants] had with [plaintiff's] representatives . . . were with employees based in [plaintiff's]

satellite office in Tennessee"); c*f. NEXTEP, LLC*, 2007 WL 9809030, at *4 (finding that a nonresident defendant's phone calls to Missouri as part of extraterritorial tortious conduct deliberately aimed at a Missouri plaintiff would not offend fair play and substantial justice). Plaintiff argues that BAY targeted Missouri merely because BAY "markets its services throughout the United States, including Missouri," and because BAY has two customers in Missouri.  Doc. [20-1] at 6.  But marketing throughout the United States, without any evidence of specific marketing directed at Missouri, does not reflect that BAY *uniquely or expressly* aimed its actions at this state.  There are simply no suit-related contacts here between BAY and Missouri.

Moreover, it is not at all clear that "the brunt of" the alleged harm here is likely to be suffered in Missouri.  Though Plaintiff asserts that its principal place of business is Missouri, both Goodhue and Trygstad stated in their declarations that Tribus did not have a physical office in Missouri during their employment with Tribus.  Docs. [37-1] ¶ 4; [38-1] ¶ 4.  Plaintiff asserted that it maintains its principal place of business at 5640 B Telegraph Road in St. Louis; Goodhue, meanwhile, claims that Plaintiff merely "maintained a mailbox inside a UPS store" at that address and that during her employment no Tribus employees worked at that address.  Doc. [37-1] ¶¶ 5–6.  Similarly, Trygstad claimed in her declaration that, during her employment with Tribus, "no Tribus employees worked at a physical office in Missouri."  Doc. [38-1] ¶ 5.  Tribus's director of marketing, Stegemann, asserted that Tribus's accounting personnel were located in Missouri during the times relevant here, but he noted that Tribus's management was in Missouri for only one third of the time Goodhue and Trygstad worked for Tribus.  Docs. [32-1] ¶ 34; [34-1] ¶ 34.  Finally, it is uncontested that Tribus provides services in multiple states, of which Missouri is only one.  Doc. [20-1] ¶ 35.  In fact, Stegemann's declarations that both Goodhue and Trygstad "regularly worked with Plaintiff's Missouri client, who is located in Columbia, Missouri," Docs.

[32-1] ¶ 35 and [34-1] ¶ 35, suggest that Plaintiff has only a single client in Missouri.  Viewing this evidence as a whole, the Court has little foundation on which to hold that the brunt of any alleged harm would be felt by Tribus primarily in Missouri.[4]  Because Plaintiff has failed to carry its burden of showing that BAY has sufficient minimum contacts with Missouri, the Court finds it does not have personal jurisdiction over BAY.

### B.  Defendants Goodhue and Trygstad

The Court likewise does not have specific jurisdiction over either Goodhue or Trygstad.  Reference to the first three factors of the traditional five-factor approach makes clear that the record is devoid of any suit-related contacts between either Goodhue or Trygstad and Missouri.  *See House of Thaller*, 2020 WL 1442856, at *5.  Neither Goodhue nor Trygstad traveled to Missouri for their work with Plaintiff, a point Plaintiff appears to not dispute.  *See* Docs. [37-1] ¶ 7; [38-1] ¶ 6; [32] at 10; [34] at 9.  Both worked primarily with out-of-state Tribus employees[5] and with clients throughout the United States.  Docs. [37-1] ¶¶ 9–10; [38-1] ¶¶ 8–9.  While Stegemann asserted that Goodhue and Trygstad worked with Tribus's single Missouri client and had virtual meetings with that client, Plaintiff did not allege that either Goodhue or Trygstad interacted any more with that client than any of their other, out-of-state clients, or that their work in general had any significant or meaningful connection to Missouri.  And though he claimed Goodhue and Trygstad regularly communicated with Plaintiff's accounting personnel and

---

[4] Even if Plaintiff did feel the bulk of the harm in this state, that would not by itself provide a basis for personal jurisdiction.  *See Insituform Techs.*, 398 F. Supp. 2d at 1066 ("As a general matter, the commission of extraterritorial tortious conduct having consequences in Missouri is alone insufficient to satisfy due process."); *NEXTEP, LLC*, 2008 WL 9809030, at *4 (noting that a plaintiff generally "may not invoke tortious long-arm jurisdiction consistent with due process where the nonresident defendant had no contact with Missouri besides the extraterritorial acts having consequences in Missouri").  To reiterate: "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."  *Walden*, 571 U.S. at 290.

[5] Trygstad, in fact, declared that she never interacted with any Missouri Tribus employee.  Doc. [38-1] ¶ 8.

management, Stegemann's concession that management was located in Missouri for only a third of the time Goodhue and Trygstad worked for Tribus substantially lessens the import of that claim. Stegemann, who supervised both Goodhue and Trygstad, himself worked outside Missouri for a majority of the time Goodhue and Trygstad worked for Tribus.  *See* Docs. [32-1] ¶ 37; [37-1] ¶ 8; [38-1] ¶ 7.

Plaintiff also argues that Goodhue and Trygstad's knowing use of Plaintiff's servers provides a relevant contact with Missouri.  *See* Docs. [32] at 10; [32-1] ¶ 36.  But Stegemann acknowledged that Plaintiff has servers "around the world," and while he asserted that Goodhue and Trygstad accessed Plaintiff's Kansas City and St. Louis servers and were aware of their locations, he did not suggest that the allegedly misappropriated trade secret information was located on those servers specifically or that Goodhue and Trygstad intentionally accessed or utilized those servers.  The evidence does not support that Defendants' use of Plaintiff's Missouri servers was anything more than "fortuitous."[6]  *Cf. Guaranteed Rate, Inc. v. Conn*, 264 F. Supp. 3d 909, 921–22 (N.D. Ill. 2017) (rejecting argument that defendant's access of plaintiff's Illinois-based servers, even if knowing, should qualify as conduct taking place in the forum or aimed at the forum by defendant because "[t]he role that Illinois servers play[ed] in [plaintiff's] network [was] the result of conduct by [plaintiff], not [defendant]").

---

[6] Stegemann also stated that, when Goodhue and Trygstad accessed some of Plaintiff's documents, their computers "linked to [his] computer and where [he] was working."  Docs. [32-1] ¶ 37; [34-1] ¶ 37.  First, the Court notes that, per his own declaration, Stegemann worked outside Missouri more often than inside it during Defendants' employment with Plaintiff.  *See id.*  Second, as with any contacts they had with Plaintiff's Missouri servers, if and when Goodhue or Trygstad's computers connected with Stegemann's computer, there is no evidentiary support that such connection was the result of Defendants' "purposeful[] direct[ion]" toward Missouri, see *Burger King*, 471 U.S. at 473, rather than Stegemann's own "unilateral activity," which "cannot satisfy the requirement of contact with the forum state."  *Id.* at 474–75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *Frost*, 951 F.3d at 980 ("Because [plaintiff] just happens to work and maintain an office in Minnesota, these contacts fit into the 'random, fortuitous, or attenuated' category.").

Plaintiff has, overall, provided the Court with evidence suggesting that Goodhue and Trygstad have only scattered and attenuated contacts with Missouri through their employment with Plaintiff;[7] few, if any, of those contacts can be considered a product of Goodhue or Trygstad's own intentional and purposeful effort to create a connection with Missouri.  It can hardly be said that, on the whole, Goodhue or Trygstad's Tribus employment was "closely tied to" Missouri.  *See Liqui-Box Corp. v. Scholle IPN Corp.*, No. 19-cv-4069, 2020 WL 5593755, at *7 (N.D. Ill. Sept. 18, 2020).  Finding jurisdiction here would not accord with the Supreme Court's direction that "[d]ue process requires" jurisdiction to be based on the defendant's *own* affiliation with the forum. *Walden*, 571 U.S. at 286 ("To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties.  But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."); *see also Frost*, 951 F.3d at 980 ("[W]hen the only connection between the defendants and the forum state is the plaintiff himself, they are not enough on their own.").

Finally, *Calder* helps Plaintiff no more with respect to Goodhue and Trygstad than it did with BAY.  Plaintiff has made no allegation that the information Goodhue and Trygstad allegedly misappropriated bore any unique or particular relationship with Missouri, such as having to do with Plaintiff's Missouri client or being located on Plaintiff's Missouri servers.  Any relation of the confidential materials from Goodhue or Trygstad to BAY would have occurred outside Missouri.  Further, Plaintiff has provided no evidence of Goodhue or Trygstad's use of that information in Missouri, instead vaguely alleging they "provided that information to Defendant

---

[7] And Defendants, through their work for Tribus, have no clearer tie to Missouri than any other state in which Tribus operates.  For example, Goodhue and Trygstad lived, worked, and interacted with other Tribus employees in Colorado.  Even if a plaintiff's ties to the forum could support personal jurisdiction, Tribus's own ties to Missouri do not appear to be particularly extensive.  Goodhue and Tygstad likely have no greater reason to anticipate being haled into court in Missouri than in Colorado or any other state they conducted work-related activities for Plaintiff.

BAY to use to market [its] services throughout the United States, including Missouri." Docs. [32] at 9; [34] at 9. Plaintiff has given the Court no basis to hold that Goodhue or Trygstad's misappropriation was expressly aimed at Missouri. And, as discussed in its analysis with respect to BAY, the Court finds insufficient evidence to ground the claim that Plaintiff would feel the brunt of any harm here in Missouri; the record is conspicuously unclear as to Plaintiff's presence in Missouri and lacks support suggesting Goodhue and Trygstad's employment with Plaintiff was truly "Missouri-based." *Cf. Liqui-Box*, 2020 WL 5593755, at *7 (exercising jurisdiction where the moving party's "remote employment was closely tied to Illinois and [] he obtained the information at the heart of this dispute from his Illinois-based employment"). For these reasons, the Court finds Goodhue and Trygstad lack the requisite contacts with Missouri to justify its exercise of personal jurisdiction over them.

## CONCLUSION

The Court, having considered the totality of the circumstances on the evidence before it, finds that Plaintiff has not carried its burden of demonstrating that Defendants purposefully directed their activities at Missouri or that they have sufficient minimum contacts supporting the Court's exercise of personal jurisdiction in this case. *See Whaley*, 946 F.3d at 451.

The Court also denies Plaintiff's request for limited jurisdictional discovery. *See* Docs. [20] at 8; [32] at 10; [34] at 10. Plaintiff has offered no suit-related contacts with Missouri on which further discovery could shed light, and Plaintiff's vague and broad request to "conduct discovery into [Defendants'] contacts with the forum" lacks any specificity as to what contacts Plaintiff could pursue or how they could provide either general or specific jurisdiction here. The Court will not grant jurisdictional discovery on so speculative a request. *See Viasystems, Inc.*, 646 F.3d at 598 ("[W]hen a plaintiff offers only speculation or conclusory assertions about contacts

with a forum state, a court is within its discretion in denying jurisdictional discovery." (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1074 n.1 (8th Cir. 2004))); *House of Thaller*, 2020 WL 1442856, at *8 (denying jurisdictional discovery where "additional discovery of [defendants'] contacts with Minnesota-based companies would provide no further basis for jurisdiction over [defendants]").

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Back At You, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, Doc. [15], is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Jennifer Goodhue's Motion to Dismiss for Lack of Personal Jurisdiction, Doc. [21], is **GRANTED**.

**IT IS FINALLY ORDERED** that Defendant Paige Trygstad's Motion to Dismiss for Lack of Personal Jurisdiction, Doc. [31], is **GRANTED**.

A separate order of dismissal will be entered herewith.

Dated this 17th day of May, 2021.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE